REIDUN STRØMSHEIM # 104938
LINDA SORENSEN # 72753
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235
rstromsheim@stromsheim.com

Attorneys for Trustee,
JOHN T. KENDALL

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

PW COMMERCIAL CONSTRUCTION,
INC., a California Corporation
TAX IDN 20-0540430

Debtor

Case No. 07-40608 NK

Chapter 7

(No hearing unless requested)

**APPLICATION FOR ORDER APPROVING COMPROMISE**

TO THE HONORABLE RANDALL J. NEWSOME, UNITED STATES BANKRUPTCY JUDGE:

John T. Kendall ("Trustee"), trustee of the above referenced bankruptcy estate, respectfully requests an order approving the global compromise reached at the Judicial Settlement Conference held on March 1, 2010, which resolves the controversies between the Trustee and Edwin Law, Eric C. Au, Gavin Lam, Laurence Lee, Haven Airport Gateway, LLC, Glennmore Properties, LLC, Pineterra Development, LLC, Pearl Gateway Development, LLC, and Lynns Regent, LLC, in the respective lawsuits *Kendall v. Edwin Law et al.*, AP # 08-4307, and *Kendall v. Lynns Regent, LLC*, AP #09-4103, and additional participating persons Lynns Regent, Inc., Rodney A. Marraccini, and Mark M. O'Brien, all as set forth in the Settlement Agreement attached to a declaration filed in support hereof. In support of this request, the Trustee represents as follows:

1. John T. Kendall is the duly appointed, qualified and acting trustee for the above-referenced Chapter 7 estate. An Order for relief under Chapter 11 of Title 11 of the United States Code was entered herein pursuant to a voluntary petition filed by the Debtor on February 28,

2007. The case was converted to Chapter 7 on December 5, 2007.

2. Applicant has entered into a global compromise summarized as follows: The Defendants will pay $660,000 in full settlement of the controversies, and releases will be exchanged. Of that amount, $535,000 of the Settlement Payment shall not be refundable to Defendants. The remainder, being $125,000 (the "Potential Refund Portion"), is subject to possible refund, in whole or in part, dependent upon the degree to which Defendants obtain disallowance of proofs of claim filed herein by Chateau de Louis, LLC, No. Nine, LLC, and Real Enterprises, LLC (collectively, the "Chateau Parties"), each claim asserted in excess of $2 Million (but believed to based on a single amended judgment against Pinewave Construction, Inc., for approximately $1,800,000). In addition, attorney Mark M. O'Brien will withdraw his proof of claim, and attorney Rodney A. Marraccini will withdraw the unpaid amount from his fee application. As a condition, the proofs of claim of the Lily Hsu Litigants will be withdrawn from the Case. Complete details are materially as set forth in the Settlement Agreement attached to a supporting Declaration, and which were stated and agreed to on the Record in open court on March 1, 2010. This compromise fully administers any and all avoidance actions as against these transfer recipients which creditors of Debtors might have asserted had a bankruptcy trustee not been appointed. (Certain creditors had in fact commenced fraudulent transfer litigation in State Court prior to the filing of the Debtor's bankruptcy case.) They also resolve main case matters herein as specified, including regarding fees paid to certain of Debtor's counsel prior to and/or during the Chapter 11 case.

3. The Trustee commenced the two separate adversary proceedings, seeking to recover money damages and sanctions against certain defendants for the benefit of the bankruptcy estate of Debtor on account of prepetition and postpetition acts and transfers. The Trustee sought to recover from certain defendants sufficient monies to satisfy the expenses of administration and valid claims, in full. By various measures, the Trustee sought to recover up to $3 Million, or more, based on relatively complex causes of action that alleged, in a nutshell, that Debtor was given life by transfers from a predecessor construction company, and operated not to generate assets from which its preexisting creditors could obtain payment for their claims, but instead to

1. confer benefits on insiders and leave nothing for those disfavored creditors.

2. 4. As the core of the dispute, the Trustee further alleged that defendants operated an abusive Chapter 11 case, acting unlawfully by, for example, disbursing funds without court authority to favored prepetition creditors and failing to disclose insider advantages, and the Trustee alleged that the proceeds of Chapter 11 operations were suppressed and/or were not fully accounted for. The Trustee's motion for an order to show cause for sanctions was consolidated by the Court for trial with the complaint in *Kendall v. Law et al.*

3. 5. The defendants denied the Trustee's allegations and the matters were vigorously contested. Motions were made; many depositions were taken; and a great quantity of documents were obtained by subpoena and other sources. Experts were consulted for prospective expert opinions. A complication in pursuing the actions, and also a litigation sanctions issue, was the erasure of computer harddrives during the Chapter 11 case.

4. 6. The parties postponed experts disclosure and trial setting and pursued Judicial Mediation with Judge Dennis Montali, which resulted in the global settlement.

5. 7. A particular difficulty in the litigations, which was also a major difficulty in achieving compromise, was vigorous dispute between the Trustee and the defendants (and elsewhere between defendants and the Chateau Parties) about whether and to what extent the Chateau Parties had valid claims against Debtor's estate, including whether Debtor had been insolvent, possibly dependent upon whether the Chateau Parties' claims were valid against Debtor. The Chateau Parties had obtained an arbitration judgment against non-debtor Pinewave Construction, Inc. for slightly less than $1.8 Million.

6. 8. During the within Chapter 7 case, the Chateau Parties had received relief from the automatic stay in Debtor's case in order to liquidate the relevant claims in their prepetition state law "fraudulent conveyance" litigation, *Chateau de Louis, LLC, et al. v. Eric Au et al.*, San Francisco Superior Court Case No. CGC06-458814. However, in Fall 2009 the Chateau Parties dismissed it without prejudice, leaving unresolved whether they had any claims against Debtor on theories of fraudulent conveyance, successor liability, or the like, or the quantification of such claims.

9. The prepetition and Chapter 11 expense of administration Proofs of Claim on file, other than those of the Chateau Parties and the Lily Hsu Litigants, were relatively modest.[1] The litigation expense for both sides to the adversary proceedings identified above was continuing to be disproportionate with the amount which would be sought from defendants if those large claims were not involved.

10. Furthermore, the need to prove insolvency and amounts of disputed Proofs of Claim would increase both the Trustee's expense and his risk of litigation. Other issues in vigorous dispute included, but were not limited to, whether or not the Debtor's insider construction contracts were priced unfairly to the Debtor, and whether the Debtor had funded other enterprises of defendants, its opportunities were usurped, and its assets were siphoned off in bad faith. A major dispute concerned which of the defendants, if any, could be made liable for whatever losses the Trustee might prove. For most of the Trustee's theories of recovery, the defendants asserted that in any event recovery would be limited by the amount necessary to satisfy allowed claims in the Debtor's case.

11. The settlement amount is a significant amount of money, and well within the range of reasonableness for the types of causes of action asserted, and for the litigation risks, collection risks, delays, and litigation expense including for experts, that the Trustee faced. The matter was by no means easy or certain of result. (After all, the Chateau Parties had separately pursued similar matters for years and in essence gave up.)

12. It was not possible to obtain by settlement the potential sum of $660,000 in the event that the Chateau Parties' claims are allowed, without permitting certain of the defendants the

---

[1] The proofs of claim numbered 1 to 27 according to the Register, other than those of Chateau Parties, Lily Hsu Litigants, and Mark M. O'Brien, have been asserted in the total amount of $24,946.72 of Ch.11 expenses of administration and priority claims, and $154,721.57 of general unsecured claims. Other creditors may be entitled to file claims for preferences and unlawful postpetition transfers recovered from them, who have not yet filed such claims. Applicant believes that there may be an unpaid balance of fees sought by the fee application of James A. Tiemstra, attorney for the Debtor in Possession, but Applicant does not have a statement of the amount.

1 opportunity to undertake the continued challenge to those claims (for which they had already prepared) and resultantly have the potential of paying a lesser sum. $535,000 is a very favorable compromise if there are no Chateau Parties' claims to share in distributions, and amounts beyond that up to the $660,000 potential total are well within the range of reasonableness in all of the circumstances if some portions of the Chateau Parties' claims share in distributions, particularly given the savings to the estate of litigation expense. If the defendants do not object to the Chateau Parties' claims, the Trustee currently plans to do so.

13. Additional participants in the compromise include two of the attorneys for some of the defendants who also represented the Debtor, who will retain what they have already been paid by Debtor on account of their fees without further review, but will seek no more fees from Debtor's estate, and also the predecessor landlord of Debtor's Walnut, California, business premises, which received some rent but was not named in any of the lawsuits.

14. Based upon the factors set forth in Martin v. Kane, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom.*, Martin v. Robinson, 107 S.Ct. 189 (1986), the Trustee believes that the compromise is fair and reasonable: (1) if the case were completely litigated, it is not absolutely certain whether the estate would obtain judgment better than the settlement results; (2) continuing the litigation would incur substantial expenses and inconvenience to the estate; (3) voluntary payment is significantly more advantageous than collection activities as a general matter, and the circumstances indicated questions of whether judgment would be obtained against persons likely or able to pay, and future difficulties in realizing upon judgments; and (4) the paramount interest of the creditors is better served by the compromises than incurring further attorney's fees and costs, and delays including potential appeals.

15. A Notice of the proposed compromises is being served on all interested parties, concurrently herewith. The notice provides that any party who wishes a hearing on the compromise, or objects to the compromise, must comply with Local Rule 9014-1 of the Local Rules for United States Bankruptcy Court, Northern District of California, and states that pursuant to B.L.R. 9014-1 an objecting party must file with the Bankruptcy Court and serve counsel for the Trustee with a written objection, along with declarations and/or memoranda of law supporting the

objection, no later than 21 days after service of the Notice.

WHEREFORE, the Trustee respectfully requests that an order approving the global compromise as set forth above and materially as reflected in the Settlement Agreement filed herewith.

DATED: This 12th day of March, 2010.

STROMSHEIM & ASSOCIATES

/s/ Linda Sorensen
Attorneys for Plaintiff,
JOHN T. KENDALL, Trustee

STROMSHEIM & ASSOCIATES